# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Venture Bank, Inc.,
a Minnesota corporation,

        Plaintiff,

    v.

The United States of America,

        Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 11-3548 ADM/JSM

_____

Leslie M. Witterschein, Esq., Monroe Moxness Berg PA, Minneapolis, MN, on behalf of Plaintiff.

Mark C. Milton, Esq., United States Department of Justice, Washington, DC, on behalf of Defendant.

_____

## I. INTRODUCTION

On November 19, 2012, the undersigned United States District Judge heard oral argument on Defendant United States of America's ("Government") Motion for Summary Judgment [Docket No. 14] and Plaintiff Venture Bank, Inc.'s ("Venture Bank") Motion for Summary Judgment [Docket No. 21]. In this wrongful levy action, Venture Bank alleges federal tax liens on real property acquired by Venture Bank were not valid as to Venture Bank because a reasonable inspection of the public record did not reveal the existence of the liens. The Government disputes the allegations and contends the levy was lawful. For the reasons set forth below, the Government's Motion is granted, and Venture Bank's Motion is denied.

## II. BACKGROUND[1]

### A.    Venture Bank Mortgage

In November 2007, Venture Bank loaned Advance Tool, Inc. ("Advanced Tool") $1,000,000 in exchange for a mortgage on property located at 1590 99th Lane NE, Blaine, Minnesota (the "Property").  Aff. of Leslie M. Witterschein, 10/01/12 ("Witterschein Aff.") [Docket No. 22] Ex. C (Mortgage).  The mortgage was recorded with the Anoka County Recorder's Office on December 3, 2007.  Decl. of Mark C. Milton, 9/27/12 ("First Milton Decl.") [Docket No. 17] Ex. 1 (Notice of Mortgage Foreclosure Sale Pursuant to Voluntary Foreclosure Agreement).

### B.    Federal Tax Liens

In March and June of 2010, the Secretary of the Treasury assessed Advanced Tool for unpaid federal employment taxes.  Decl. of Deborah Olson, 9/27/12 ("Olson Decl.") [Docket No. 18] ¶ 3, Ex. 2 (Notice of Levy).  The unpaid assessments totaled $91,050.21.  Id. ¶ 3.  The Secretary of the Treasury gave timely notice and demand for each assessment.  Id. ¶ 4.

On October 8, 2010, the IRS filed a notice of federal tax lien against Advanced Tool in Anoka County, Minnesota for the unpaid federal employment taxes.  Id. ¶ 5.  The Anoka County Recorder's Office recorded the notice of federal tax lien on October 13, 2010.  Id. Ex. 1 (Notice of Federal Tax Lien) at 2.

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  As both parties have moved for summary judgment, any disputed facts are noted.

## C.    First Title Search

Advanced Tool defaulted on its mortgage payments to Venture Bank, and on October 29, 2010 agreed to a voluntary foreclosure of the Property.  See Witterschein Aff. Ex. F (Voluntary Foreclosure Agreement).  On November 17, 2010, in preparation of the foreclosure, Venture Bank's counsel asked West Title, LLC ("West Title") to prepare an Owners and Encumbrances ("O&E") Report for the Property.  Id. Ex. G.

West Title searched for encumbrances against the Property and for liens and judgments against Advanced Tool (the "First Search") using an online search engine called "Orbit."  Id. Ex. A (Balow Dep.) at 9:23-10:12; 15:5-8; 16:3-6.  In the Orbit system, judgments and tax liens are located by searching the general index for a property owner's name.  Witterschein Aff. Ex. B (Edgeton Dep.) at 8:24-9:4; Balow Dep. at 9:23-10:16.  Encumbrances against property are located by searching the tract index for the real estate parcel.  Balow Dep. at 10:1-3.

At the time the First Search was conducted, the general index in the Orbit database was current only through October 7, 2010.  Balow Dep. at 16:3-6, 18:7-9; First Milton Decl. Ex. 5 at Ex. 13.  As a result, the federal tax liens recorded on October 13, 2010 were not found and not reported on the O&E Report sent to Venture Bank's counsel.  Balow Dep. at 16:7-20; First Milton Decl. Ex. 5 at Ex. 7.  The name search in the general index did reveal four judgments and one state tax lien against Advanced Tool which were included in the O&E Report.  First Milton Decl. Ex. 5 at Exs. 7, 13.  The O&E Report specifies an "effective date" of November 5, 2010.  See id. Ex. 5 at Ex. 7.  Though not explained in the O&E Report, the "effective date" represents the date to which the tract index is current in the Orbit database.  Balow Dep. at 17:12-18:9.

**D.      Sheriff's Sale**

A sheriff's sale of the Property ("Sheriff's Sale") was held on December 15, 2010.  See Witterschein Aff. Ex. J (Sheriff's Certificate of Sale and Foreclosure Record).  The parties do not dispute that the IRS did not receive notice of the Sheriff's Sale.  See First Milton Decl. Ex. 3 (Aff. of Dana A. Dullum) ¶ 11.  Venture Bank purchased the Property at the Sheriff's Sale. Witterschein Aff. Ex. J.

**E.      Second Title Search**

On December 17, 2010, counsel for Venture Bank asked Guaranty Commercial Title, Inc. ("Guaranty Title") to prepare a title insurance commitment for the Property.  Witterschein Aff. Ex. K.  In response to the request, Mary Edgeton, a title examiner at Guaranty Title, performed a title search of the Property (the "Second Search") using the Orbit search engine.  Id. at 8:3-9:10. Edgeton's title search did not reveal the federal tax lien, nor did it reveal the four judgments and the state tax lien found by West Title.  See Decl. of Mark C. Milton, 10/22/12 ("Second Milton Decl.") [Docket No. 28] Ex. 1 at Ex. 2, pp. 4-5 (showing no exceptions to Commitment for Title Insurance prepared from Second Search).

The parties dispute whether Edgeton performed a name search for liens and judgments in Orbit when she prepared the title insurance commitment, and Edgeton's deposition testimony is inconsistent on this issue.  Edgeton testified that she did not recall whether she performed a name search when preparing the commitment.  Edgeton Dep. at 14:18-20.  However, she also stated that she did perform a name search.  Id. at 9:5-10.  When asked whether it was possible she did not do a query search for Advanced Tool, Edgeton responded, "I can't guess."  Id. at 18:9-12.

**F. Third Title Search**

In February of 2011, Venture Bank again requested a commitment for title insurance from Guaranty Title. Edgeton Dep. at 14:21-15:2; Second Milton Decl. Ex. 1 at Ex. 3. In response, Edgeton performed a title search for the Property (the "Third Search") using the Orbit system. Edgeton Dep. at 26:5-7. This time, the title search uncovered the federal tax liens that had been recorded against Advanced Tool on October 13, 2010. <u>See</u> Second Milton Decl. Ex. 1 at Ex. 3 ¶ 18. The Third Search also revealed the four judgments and state tax lien that had been located by the First Search but not by the Second Search. <u>See</u> <u>id.</u> Ex. 1 at Ex. 3 ¶¶ 12-16. The Third Search additionally revealed a fifth judgment against Advanced Tool that had been docketed on October 8, 2010. <u>See</u> <u>id.</u> Ex. 1 at Ex. 3 ¶ 17. This judgment was not uncovered by the First and Second Searches. <u>See</u> <u>id.</u> Ex. 1 at Ex. 2; First Milton Decl. Ex. 5 at Ex. 7. Guaranty Title filed an Application for a Certificate of Discharge ("Discharge Application") with the IRS on April 20, 2011, seeking to clear the title by having the Property discharged from the federal tax lien. Olson Decl. ¶ 6; Witterschein Aff. Ex. T (Discharge Application).

**G. Sale to Third Party**

On July 13, 2011, while the Discharge Application was pending, Venture Bank sold the Property to a third party (the "Third Party Sale"). First Milton Decl. Ex. 4 (Seller's Statement). Guaranty Title, serving as closing agent, placed $90,000 of the proceeds from the Third Party Sale into escrow pending resolution of the Discharge Application. <u>Id.</u>; Compl. [Docket No. 1] ¶ 14. The IRS denied the Discharge Application on September 28, 2011. Olson Decl. ¶ 8, Ex. 3 (Discharge Letter).

**H.     Levy on Sale Proceeds**

On August 30, 2011, the IRS sent Guaranty Title a Notice of Levy for all funds held in escrow from the Third Party Sale.  Olson Decl. ¶ 7, Ex. 2.  The IRS sent a final demand for payment to Guaranty Title on December 16, 2011.  Id. ¶ 9, Ex. 4.  Guarantee Title issued a check for $90,000 to the United States Treasury on or about December 21, 2011.  Id. ¶ 10, Ex. 5.  The IRS applied the funds to Advance Tool's federal employment tax liabilities.  Id. Ex. 5.

**I.     Present Action**

Venture Bank filed this action under 28 U.S.C. § 7426, alleging the IRS wrongfully levied on the Third Party Sale proceeds held in escrow.  Compl. ¶¶ 23-25.  Venture Bank contends the federal tax liens were unenforceable against it because Venture Bank did not have actual notice of the liens when it purchased the real property at the Sheriff's Sale, and a reasonable inspection of the Anoka County public record did not reveal their existence.  Id. ¶ 23.  Venture Bank seeks the return of the $90,000 that was levied and also claims damages from the alleged misconduct of the IRS.  Id. ¶ 33.

The Government argues that the levy was lawful because notice of the federal tax liens was properly filed more than 30 days before the Sheriff's Sale, and the IRS was not given notice of the Sheriff's Sale.  The Government thus contends the federal tax liens remained undisturbed by the Sheriff's Sale and were enforceable against Venture Bank.

### III. DISCUSSION

**A.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(c)).[2]  On a motion for summary judgment, the

court views the evidence in the light most favorable to the nonmoving party, giving the

nonmovant the "benefit of all reasonable inferences to be drawn from the facts."  Schrader v.

Royal Caribbean Cruise Line, Inc., 952 F.2d 1008, 1013 (8th Cir. 1991) (quoting Woodsmith

Pub. Co. v. Meredith Corp., 904 F.2d 1244, 1247 (8th Cir. 1990)).  The nonmoving party,

however, may not "rest on mere allegations or denials, but must demonstrate on the record the

existence of specific facts which create a genuine issue for trial."  Krenik v. Cnty. of Le Sueur,

47 F.3d 953, 957 (8th Cir. 1995).

**B.     Burdens of Proof**

In a wrongful levy action under 26 U.S.C. § 7426, the plaintiff carries the initial burden

of showing an interest in the property levied on by the government to satisfy the debt of another

person.  Xemas, Inc. v. United States, 689 F. Supp. 917, 922 (D. Minn. 1988).  "The burden then

shifts to the government to prove the nexus between the property and the taxpayer by substantial

evidence.  The plaintiff has the ultimate burden of proving that the levy was wrongful and should

be overturned."  Id.

**C.     Analysis**

At issue here is whether the federal tax liens on the Property were enforceable against

Venture Bank following the bank's purchase of the Property at the Sheriff's Sale.[3]  The

_____

[2] The summary judgment standard was previously located in Rule 56(c).

[3] Venture Bank does not dispute that federal tax liens arose from Advance Tool's failure
to pay federal employment taxes, and that the federal tax liens attached to the Property owned by
Advance Tool at the time the unpaid federal taxes were assessed and demand for payment was

Government argues the liens remained undisturbed under 26 U.S.C. § 7425 and were thus enforceable against Venture Bank. Venture Bank contends § 7425 must be read in conjunction with 26 U.S.C. § 6323, and that under § 6323 the liens are not valid against it.

> **1.      26 U.S.C. § 7425(b)**

Section 7425(b) of the Internal Revenue Code applies where, as here, property subject to a federal tax lien is sold in a non-judicial sale. Under 26 U.S.C. § 7425(b)(1), a non-judicial sale:

> shall, except as otherwise provided, be made subject to and without disturbing such lien . . . if notice of such lien was filed . . . in the place provided by law for such filing or recording more than 30 days before such sale and the United States is not given notice of such sale in the manner prescribed in subsection (c)(1) . . . .

Subsection (c)(1) requires written notice of a non-judicial sale be given to the Secretary not less than 25 days prior to the sale. 26 U.S.C. § 7425(c)(1). Together, § 7425(b) and (c) provide that a federal tax lien will continue to attach to property sold in a non-judicial sale "so long as the United States recorded a notice of lien at least thirty days before the sale and it did not receive notice of such sale at least twenty-five days in advance." Russell v. United States, 551 F.3d 1174, 1179 (10th Cir. 2008); see also Southern Bank of Lauderdale County v. IRS, 770 F.2d 1001, 1006 (11th Cir. 1985); Myers v. United States, 647 F.2d 591, 596-97 (5th Cir. 1981).

The parties do not dispute that notice of the federal tax lien was filed and recorded in Anoka County as of October 13, 2010, more than 30 days before the December 15, 2010 Sheriff's Sale. It is also undisputed that the IRS was not given notice of the sale. Thus, under §

---

made. See Minn. Dep't of Revenue v. United States, 184 F.3d 725, 728 (8th Cir. 1999) ("The lien arises automatically when the assessment is made and continues until the taxpayer's liability is either satisfied or becomes unenforceable due to the lapse of time.") (citing 26 U.S.C. § 6322).

7425(b)(1), the Sheriff's Sale did not disturb the federal tax liens, and the liens remained attached to the Property when it was transferred by purchase from taxpayer Advanced Tool to Venture Bank. See Myers, 647 F.2d at 596-97 (stating a lien that is left undisturbed by a non-judicial sale under § 7425(b) "will follow the property into the hands of the subsequent purchaser").

### 2. 26 U.S.C. § 6323

Venture Bank argues the levy was nevertheless wrongful because the phrase "except as otherwise provided" in § 7425(b)(1) requires § 7425(b)(1) to be read in conjunction with 26 U.S.C. § 6323, and under the latter provision the federal tax liens are not enforceable against Venture Bank. Section 6323 provides that a federal tax lien is not valid against a purchaser of property encumbered by such lien unless the IRS files notice of the lien "which meets the requirements of subsection (f) . . . ." 26 U.S.C. § 6323(a)(1). Venture Bank contends the IRS failed to comply with the fourth provision of subsection (f), which required the notice of the federal tax liens to be "entered and recorded in the index . . . in such a manner that a reasonable inspection of the index will reveal the existence of the lien[s]." 26 U.S.C. § 6323(f)(4).

Specifically, Venture Bank argues the First Search was a reasonable search of the Anoka County public index that did not reveal the existence of the federal tax liens. Venture Bank contends the First Search was reasonable because it conformed to the industry standard of using online search engines to conduct title searches in Anoka County. Venture Bank also argues the Second Search is further evidence that the First Search was reasonable, because the Second Search also failed to uncover the federal tax liens.

The Government disputes that § 7425(b)(1) must be read in conjunction with § 6323.

Additionally, the Government argues that even if § 6323 were to apply, it would not protect Venture Bank from the IRS's enforcement of the federal tax liens, because Venture Bank did not conduct a reasonable search of the public index before it purchased the Property at the Sheriff's Sale. The Court need not decide whether § 7425(b)(1) must be read in conjunction with § 6323, because even if § 6323 were to apply, the evidence does not show that the searches relied on by Venture Bank were reasonable inspections of the public index.

Whether a search qualifies as a "reasonable inspection" under § 6323(f)(4) is a mixed question of law and fact. Green Pastures Christian Ministries, Inc. v. United States (*In re* Green Pastures Christian Ministries, Inc. ), 437 B.R. 465, 473 (Bankr. N.D. Ga. 2010). The legal question is "whether a person inspecting the index could reasonably be expected to have discovered the lien using the resources available under relevant conditions pertaining to the search." Id. The answer depends on the circumstances of each search. Id.; see also Kivel v. United States, 878 F.2d 301, 304-05 (9th Cir. 1989) (analyzing facts relevant to search to determine whether the circumstances constituted a reasonable inspection); United States v. Buenting (*In re* In re Crystal Cascades Civil, LLC), 415 B.R. 403, 411-12 (9th Cir. B.A.P. 2009) (same). Courts agree that a "reasonable inspection" under § 6323(f) requires a search to be made diligently. See Tony Thornton Auction Serv., Inc. v. United States, 791 F.2d 635, 639 (8th Cir. 1986) (finding sufficient notice of federal tax liens under § 6323(f) where a "reasonable and diligent search would have revealed the existence of the notices of the federal tax liens"); Green Pastures, 437 B.R. at 476 (stating "a search must be made diligently").

The circumstances surrounding the First Search show it was not reasonable and diligent under relevant conditions of this particular search. A highly relevant condition of the First

Search was the time period covered by the search, because the purpose of the search was to prepare for the service of foreclosure notices. See Witterschein Aff. Ex. G at 2 (email by Venture Bank's counsel instructing West Title to "be sure to include federal and state tax liens" because "this pertains to a foreclosure and we need to coordinate service of the foreclosure notices"). As discussed above, § 7425(b)(1) requires that the IRS be given notice of a non-judicial sale of property subject to a federal tax lien if notice of the lien has been recorded at least 30 days before such sale. Thus, a reasonable search of the federal tax liens on the Property would have necessarily included the time period through November 15, 2010, which was 30 days before the December 15, 2010 Sheriff's Sale.

On its face, the O&E Report sent by West Title to Venture Bank shows the First Search was not a reasonable inspection of the relevant time period, because the "effective date" of the report was November 5, 2010. This "effective date" left a ten-day window in which liens could have been filed by the IRS that would have entitled the IRS to notice of the Sheriff's Sale. Moreover, the actual effective date of West Title's search for recorded tax liens and judgments was October 7, 2010, the last date on which the general index of liens and judgments was current in the Orbit database. Because the search of the index as of October 7, 2010 could not possibly have revealed the existence of liens recorded on October 13, 2010, the First Search was not a reasonable search of the public index.

Venture Bank's argument that the First Search was reasonable because it conformed to the industry standard of using the online Orbit search engine misses the mark. Common sense dictates that a reasonable and diligent search for liens filed within a particular time period must include all days that fall within that time period, regardless of whether such search is conducted

online or by physically visiting the county recorder's office.

Venture Bank's reliance on the Second Search as evidence of the reasonableness of the First Search is also misplaced, because the Second Search also was not a reasonable inspection of the public index for the existence of liens. A comparison of the Second Search with the First and Third Searches shows that the Second Search failed to include the name search necessary for locating liens and judgments. The Second Search did not uncover *any* liens or judgments, whereas the First and Third searches each uncovered at least four judgments and a state tax lien. Compare Second Milton Decl. Ex. 1 at Ex. 2 pp. 4-5 (showing no policy exceptions for judgments or liens in the Title Insurance Commitment prepared from the Second Search) with id. Ex. 1 at Ex. 3 (showing policy exceptions for five judgments, a state tax lien, and federal tax liens in the Title Insurance Commitment prepared from the Third Search) and First Milton Decl. Ex. 5 at Ex. 13 (showing four judgments and one state tax lien on a computer print-out taken during the First Search). The Second Search also failed to reveal a judgment dated October 8, 2010 that was uncovered in the Third Search.[4] Compare Second Milton Decl. Ex. 1 at Ex. 2 pp. 4-5 with id. Ex. 1 at Ex. 3.

The Guaranty Title examiner who performed the Second Search was unable to explain why the Second Search revealed no liens or judgments. Edgeton Dep. at 17:15-20:16. Her recollection of whether she performed a name search for tax liens in the general index for tax liens is not consistent. On one occasion she stated she had conducted a name search, id. at 9:7-10, but on another, she stated that she did not recall whether she performed the search. Id. at

---

[4] The First Search obviously did not uncover the October 8, 2010 judgment because the Orbit database was current only through October 7, 2010 at the time the First Search was conducted.

14:16-20.  When asked whether it was possible she had not queried the name index for Advance

Tool, she responded, "I can't guess."  Id. at 18:9-12.  The only reasonable inference that can be

drawn from the evidence is that a name search of the general index was not performed during the

Second Search.  Thus, the Second Search is not probative of whether the First Search was

reasonable.

### 3.     No Showing of Unlawful Levy

In sum, the undisputed facts show the IRS was entitled to notice of the Sheriff's Sale

under 26 U.S.C. § 7425(b) and did not receive notice of the sale.  Thus, the federal tax liens

remained undisturbed by the Sheriff's Sale.  Additionally, the evidence adduced by Venture

Bank does not support a reasonable inference that the notice of federal tax liens filed by the IRS

was deficient under 26 U.S.C. § 6323(f)(4).  Therefore, the liens were enforceable against

Venture Bank.  When Venture Bank later sold the Property at the Third Party Sale, the liens

attached to the sale proceeds.  See Phelps v. United States, 421 U.S. 330, 334-35 (1975) (stating

that when property subject to a federal tax lien is sold, the federal tax lien attaches to the sale

proceeds); Tony Thornton Auction Serv., 791 F.2d at 638 (same).

Accordingly, the Government has shown by substantial evidence a nexus between the

escrowed sale proceeds and taxpayer Advance Tool.  Venture Bank, which retains the ultimate

burden of proof in this action, has not adduced evidence showing the levy was wrongful.

Because the facts do not raise a genuine dispute as to the lawfulness of the levy, the

Government's summary judgment motion is granted, and Venture Bank's summary judgment

motion is denied.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED:**

1.      Defendant's Motion for Summary Judgment [Docket No. 14] is **GRANTED**; and

2.       Plaintiff's Motion for Summary Judgment [Docket No. 21] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  January 18, 2013.